IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD WEESE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JO ANNE B. BARNHART,<br><br>　　Commissioner of<br>　　Social Security,<br><br>　　　　Defendant.　　　　　　／ | No. C 05-00485 JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is Plaintiff Donald Weese's Motion for Summary Judgment and the Cross-Motion for Summary Judgment filed by the Commissioner of the Social Security Administration ("Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, and good cause appearing, the Court hereby DENIES Weese's Motion for Summary Judgment and GRANTS Commissioner's Cross-Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Weese brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c) to obtain judicial review of a final decision of the Commissioner denying his request for Social Security benefits.

1  Weese is a sixty-four year old man with a high school education who worked as a sheet
2  metal worker. (Administrative Transcript "Tr." at 181, 214.) Although Weese claimed that he last
3  worked as a sheet metal worker in about March 1990, his treating physician, James Stone, M.D.,
4  noted in 1995 that Weese reported an attempt to return to work as a contractor briefly in September
5  1995. (*Id*. at 542.) Weese initially applied for Title II benefits in 1992, alleging disability since
6  March 7, 1990 because of nerve damage in his left arm. (*Id*. at 181-84, 210-12.)

7  Weese has undergone examinations by several medical professionals over a period of years.
8  Among these professionals is Weese's treating physician, Dr. Stone, a family practitioner and not an
9  orthopedist or neurologist, who prepared a physical capacities form in January 1993 recommending
10 limitations on Weese's ability to stand, sit, and lift and carry weights. (*Id*. at 267, 543.) In July
11 1993, neurosurgeon Alan Hunstock, M.D., concluded that surgery would not improve Weese's back
12 pain and also suggested limitations. (*Id*. at 534.) In July 1995, and then again in February 1996,
13 Kevin Satow, M.D., performed a consultative examination but found only minimal abnormalities
14 and proposed a functional capacity permitting higher limits in terms of lifting weight. (*Id*. at 365.)
15 Also in February 1996, consultative examiner Andrew Burt, M.D., an orthopedist, performed an
16 evaluation and found multiple physical abnormalities. (*Id*. at 369, 373-74.)

17 Following denial of his claim at both the initial level and upon reconsideration in 1992,
18 Weese successfully requested a hearing, which occurred on September 8, 1993 before
19 Administrative Law Judge ("ALJ") Homer Ball, Jr. (*Id*. at 539.) The ALJ issued an unfavorable
20 decision on July 29, 1994, finding that Weese had the residual functional capacity for medium work
21 not involving the use of his left arm. (*Id*. at 539.) The Appeals Council denied Weese's request for
22 review of this decision because the ALJ's decision was supported by the record and was in
23 accordance with the law and regulations. (*Id*. at 540.) Weese did not appeal this determination. (*Id*.
24 at 540.)

25 Weese filed the current application for a period of disability and disability benefits on April
26 11, 1995, alleging disability due to spinal stenosis since December 27, 1992. Subsequent to a denial
27 of his claim both initially and upon reconsideration, Weese successfully requested an ALJ hearing.
28 (*Id*. at 294-97, 310-11, 322-23, 325.) ALJ Catherine Lazuran held a hearing on September 17, 1997

2

and issued an unfavorable decision dated November 26, 1997.  (*Id*. at 540.)

After the Appeals Council declined to review the ALJ decision, Weese requested judicial review.  (*Id*. at 541.)  The United States District Court for the Northern District of California remanded the case for further proceedings, primarily because it found that the ALJ had failed to address certain essential parts of Dr. Stone's opinion and provide specific reasons for rejecting it.  (*Id*.)  The Court did find, however, that the ALJ was entitled to afford weight to Dr. Satow's opinion.  (*Id*. at 554-55.)  In making this finding, the Court also endorsed the ALJ's use of the testimony of Louis Lesko, M.D., the medical advisor and a nonexamining orthopedist, to support Dr. Satow's opinion.  (*Id*. at 554.)

On April 9, 2002, ALJ Lazuran held a hearing on remand with Weese, his then-representative Irene Lontz, and a vocational expert present.  (*Id*. at 647-717.)  The ALJ again found Weese not disabled in a decision dated January 31, 2003.  Dr. Stone had noted on December 14, 2001 that Weese was working full time in heating and air conditioning.  (*Id*. at 543.)  After the April 2002 hearing, in a letter dated November 14, 2002, the ALJ attempted to obtain additional evidence from Irene Lontz and Dan McCaskell, Weese's current representative, regarding an explanation from Weese and Dr. Stone about this statement concerning when Weese was working.  (*Id*. at 543, 640.)  No further evidence was provided by either representative.  (*Id*. at 543.)  The ALJ's decision became the Commissioner's final decision when the Appeals Council declined Weese's request for review.  (*Id*. at 521-23.)

On June 28, 2005, Weese commenced this action for judicial review of the ALJ's decision.  Weese first argues that substantial evidence does not support the ALJ's rejection of the treating physician's opinion.  Weese also argues that the ALJ's post-hearing contact with Lontz, Weese's prior representative, violated Social Security Administration procedure and Weese's right to due process.  The Commissioner argues that the ALJ did not violate Weese's due process rights or agency procedures and that the ALJ's determination is supported by substantial evidence and free of legal error.

///

///

# ANALYSIS

**A. Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the fact findings are not supported by substantial evidence. 42 U.S.C. § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Considering the administrative record as a whole, "[s]ubstantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's decision must be upheld "where the evidence is susceptible to more than one rational interpretation." *Id*. at 1039-1040. To determine whether substantial evidence exists, courts must look to the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). An ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

**B. Legal Standard for Establishing a Prima Facie Case for Disability.**

The plaintiff has the burden of establishing a prima facie case for disability. *Id*. at 1452. The disability assessment by the Commissioner follows a five-step sequential evaluation to determine whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the claimant must not be working. 20 C.F.R. § 416.920(b). Second, the claimant's impairment must be "severe." 20 C.F.R. § 416.920(c). Third, when the claimant has an impairment that meets the duration required and is listed in Appendix 1 (a list of impairments presumed severe enough to preclude work located in subpart P of part 404 of 20 C.F.R. § 416.920), or is equal to a listed impairment, benefits are awarded without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses all relevant medical and other evidence in the claimant's case record and makes findings to determine the residual functional capacity of the claimant. 20 C.F.R. § 416.920(e). The residual functional capacity assessment serves in the fourth step to determine if the claimant can perform past work. *Id*. Payments are denied if the claimant

4

can do past work. *Id*. If the impairment prevents the claimant from doing past relevant work, the claimant's age, education, work experience, and residual functional capacity are considered to see if the claimant is capable of performing other work that exists in the national economy. 20 C.F.R. § 416.920(g). The claimant is not entitled to benefits if the claimant can adjust to other work. *Id*.

In Weese's case, the ALJ determined that he was not disabled because (1) he does not have any of the related clinical findings so as to meet or equal the level of severity of any of the listings in Appendix 1, Subpart P, Regulations No. 4; (2) he has the residual functional capacity for light work; and (3) based on the vocational expert testimony, Weese's age, education, and residual functional capacity, Weese is able to perform other jobs that exist in significant numbers in the regional and national economies. (Tr. at 546.)

**C.    The ALJ's Determination that Weese Is Not Disabled Is Supported by Substantial Evidence and Free of Legal Error.**

Weese argues that the ALJ's rejection of Dr. Stone's opinion is not supported by substantial evidence and that the ALJ erred by giving greater weight to Dr. Satow's opinion. The Commissioner argues that the ALJ provided specific and legitimate reasons for discrediting Dr. Stone's opinion and accepting Dr. Satow's. The Commissioner also contends that the Court's finding in the prior proceedings, that substantial evidence supported the ALJ's reliance on Dr. Satow's opinion, bars Weese from re-arguing this issue under the "law of the case" doctrine. Weese replies that the law of the case doctrine does not apply because (1) the first decision was clearly erroneous, and (2) a manifest injustice would otherwise result. These two grounds render the doctrine inapplicable. *Mendenhall v. NTSB,* 213 F.3d 464, 469 (9th Cir. 2000) (citing *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).

An ALJ gives more weight to a treating physician's opinion than to the opinion of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Andrews*, 53 F.3d at 1040-41. Similarly, an examining physician's opinion carries more weight than does that of a nonexamining physician. 20 C.F.R. § 416.927(d)(1). The ALJ may reject, however, the controverted opinions of a treating physician by providing specific, legitimate reasons that are based on substantial evidence.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Such evidence includes the length of the treatment relationship, the nature and extent of the treatment relationship, and the opinion's supportability in objective medical evidence such as medical signs and laboratory findings. 20 C.F.R. § 404.1527(d)(2)-(3). Further, in considering such evidence, the opinion of a specialist about medical issues related to his or her area of specialty carries more weight than that of a nonspecialist. 20 C.F.R. § 404.1527(d)(5).

Here, the law of the case doctrine applies. The Court addressed the issue of the weight to accord Dr. Satow's opinion in contradicting that of Dr. Burt and Dr. Stone in the prior proceeding. (Tr. at 554-55.) Weese cites no support for his first argument that the prior decision of the Court was clearly erroneous. What remains is Weese's contention that manifest injustice results from accepting the opinion of Dr. Satow, who is less experienced, over that of Dr. Stone. The specific and legitimate reasons that the ALJ provided for discrediting Dr. Stone's opinion, in light of the very deferential substantial evidence standard afforded to the ALJ's decision, reveal that manifest injustice would not result from granting more weight to Dr. Satow's opinion than Dr. Stone's.

In particular, the ALJ offered three main reasons for discrediting Dr. Stone's opinion regarding "possible" neck osteoarthritis and right shoulder radiculopathy. First, the ALJ determined that no objective medical evidence, in the form of MRIs or x-rays of the neck or right shoulder, established these conditions or supported Dr. Stone's opinion. 20 C.F.R. § 404.1527(d)(3); (Tr. at 543.). The ALJ also found that Weese's symptoms were not very severe because Dr. Stone had referred to the above two possible diagnoses and indicated that "very simple conservative treatment would be tried," but failed to implement more serious measures like an MRI, EMG, or nerve conduction studies. (Tr. at 543.) The ALJ further determined that Dr. Stone's opinions did not rise to the level of diagnoses given his failure to obtain objective tests to verify his speculations. (*Id.*)

Second, the lack of objective evidence made the ALJ attribute more weight to Dr. Lesko's testimony that Dr. Stone was simply reporting the patient's allegations. (*Id.* at 544.) This lack of objective evidence also bolstered the weight the ALJ already gave to Dr. Lesko's opinion because he is an orthopedist. 20 C.F.R. § 404.1527(d)(5).

Third, the ALJ discredited Dr. Stone's opinion regarding osteoarthritis and radiculopathy

6

1 because he is neither an orthopedist nor a neurologist. 20 C.F.R. § 404.1527(d)(5); (Tr. at 543.). Dr.
2 Satow, on the other hand, is a consultative orthopedic examiner and did not diagnose these two
3 conditions. (Tr. at 543.) Even though Dr. Satow's report contained some errors, the ALJ was
4 entitled to give it more weight because Dr. Satow is a specialist in the field of Weese's impairment.
5 *See* 20 C.F.R. § 404.1527(d)(5). In addition, because Weese "did not complain much to Dr. Satow
6 or others about his neck or right arm" and stated at the April 2002 hearing that his main problem was
7 spinal stenosis, the ALJ concluded that Weese's claimed cervical osteoarthritis and right shoulder
8 impingement had not been severe conditions. (Tr. at 544.)

9 Therefore, the law of the case doctrine bars Weese from re-arguing the issue of the propriety
10 of the ALJ's reliance on Dr. Satow's opinion. *See Mendenhall*, 213 F.3d at 469. This holding
11 disposes of Weese's arguments that Dr. Satow's examination was cursory in nature and failed
12 correctly to capture Weese's conditions. Furthermore, the legitimate reasons for discrediting Dr.
13 Stone's opinion, which the ALJ articulated in her decision, show that manifest injustice would not
14 result from accepting Dr. Satow's and Dr. Lesko's opinion over that of Dr. Stone in determining that
15 Weese is not disabled. That is, the ALJ's acceptance of Dr. Satow's opinion and discrediting of Dr.
16 Stone's contradicting opinion constitute substantial evidence for the determination that Weese is not
17 entitled to social security benefits. The evidence regarding Weese's work activity and the
18 vocational expert's testimony further strengthen this conclusion. (Tr. at 545.)

19 Weese correctly notes that one of Dr. Stone's reports refers to Weese bringing in "records of
20 an IME" with Drs. Burt and Miller. (*Id*. at 618.) Weese also emphasizes that both Dr. Burt's and
21 Dr. Miller's opinions conclude that Weese has limitations and physical abnormalities. (*Id*. at 373-
22 74, 501.) The Court in the first proceeding, however, found that it was proper for the ALJ to
23 consider the difference between Dr. Satow's opinion and Dr. Burt's opinion as a different reading of
24 the MRI, or a difference of opinion. (*Id*. at 554-55.) Weese offers a different explanation by
25 arguing that these differences of opinion reveal errors in the alleged cursory nature of Dr. Satow's
26 examination. But even if the evidence is susceptible to more than one rational interpretation, the
27 Court must uphold the ALJ's decision. *See Andrews*, 53 F.3d at 1039-40. Thus, substantial
28 evidence supports ALJ Lazuran's decision denying Weese social security benefits.

7

**D.     The ALJ's Post-Hearing Contact with Lontz Did Not Violate Weese's Due Process Rights or Social Security Administration Procedure.**

Weese argues that the ALJ violated his due process rights by contacting and eliciting detrimental information from Lontz *ex parte*, and then relying on this information, to determine that Weese is working and that his claims to the contrary are not credible. Weese also argues that the proper procedure was to admit the evidence only after having given him and his current representative an opportunity to respond. The Commissioner argues that the ALJ's decision indicates that she learned about Weese's work activity from Dr. Stone's notes, which were submitted while the record was still open, and that Lontz did not provide any post-hearing evidence upon which the ALJ could rely.

Most courts hold that when an ALJ chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, "the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports." *Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir. 1989); *accord Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984) (denial of due process rights by use of post-hearing vocational report without opportunity to cross-examine or present rebuttal evidence); *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983) (ALJ's use of post-hearing medical report to deny claimant benefits exceeded statutory authority and violated due process). The ALJ's error in eliciting detrimental post-hearing information is harmless, however, where the ALJ "did not need to, and did not in fact rely" on such an *ex parte* report. *Rice v. Chater*, 1996 U.S. App. LEXIS 26732, at *25 (9th Cir. Oct. 9, 1996).

Similarly, Social Security Administration procedures, contained in the Hearings, Appeals and Litigation Law Manual ("HALLEX"), require the ALJ to proffer all post-hearing evidence unless (1) the claimant or the claimant's representative submitted the evidence and there is no other claimant to the hearing; (2) the claimant has knowingly waived his or her right to examine the evidence; or (3) the ALJ proposes to issue a fully favorable decision. HALLEX I-2-7-30.

In this case, Lontz did not provide any *ex parte* or post-hearing information. The ALJ specifically stated so in her decision. (Tr. at 543.) The Commissioner correctly notes that all of the

8

conversations referenced in the ALJ's letter to Lontz occurred during Lontz's representation of Weese. (*Id*. at 638-640.) Moreover, the ALJ relied instead on Dr. Stone's notes of December 14, 2001, which state that Weese "is back working full time in heating and air conditioning." (*Id*. at 543, 608.) The ALJ thus learned of Weese's work activity through Dr. Stone's own notes, which were in the record during the hearing. (*Id*. at 543.) Weese's contention that the ALJ relied on *ex parte* evidence to determine that Weese's claims are not credible also lacks merit because the ALJ initially gave Weese the benefit of the doubt regarding his work activity, in light of the unclear record. (*Id*. at 543.) Thus, the ALJ did not receive any post-hearing evidence she was required to proffer, and did not violate Weese's due process rights.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Weese's Motion for Summary Judgment and GRANTS Commissioner's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: January 31, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE